IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YOUNG AMERICA'S FOUNDATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MATTHEW SITMAN, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 1:24-cv-923 (RDA/LRV) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Know Your Enemy, Inc. ("Know Your Enemy"), Matthew Sitman, Sam Adler-Bell, and the Foundation for the Study of Independent Social Ideas, Inc., d/b/a Dissent Magazine's ("Foundation") (collectively, "Defendants") Motion to Dismiss ("Motion"). Dkt. 28. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 29), Plaintiff Young America's Foundation's ("Plaintiff") Opposition (Dkt. 31), Defendant's Reply (Dkt. 36), and Plaintiff's Sur-reply (Dkt. 40-1), the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for the reasons that follow.

1

# I. BACKGROUND

## A. Factual Background[1]

Plaintiff brings nine counts against Defendants, asserting: (1) federal trademark infringement of the "YAF" mark; (2) federal trademark infringement of the "YOUNG AMERICANS FOR FREEDOM" mark; (3) trademark counterfeiting of the "YAF" mark; (4) trademark counterfeiting of the "YOUNG AMERICANS FOR FREEDOM" mark; (5) false design origin; (6) false advertising; (7) unfair competition pursuant to Va. Code § 59.1-196 *et seq.*; (8) trademark infringement under Virginia common law; and (9) unfair competition under Virginia common law. Dkt. 2 ¶¶ 47-95.[2]

Plaintiff is a domestic nonstock corporation with its principal place of business in Reston, Virginia. *Id.* ¶ 11. Plaintiff asserts that its business is youth education and outreach. *Id.* Plaintiff is the owner by assignment of U.S. Trademark Registration No. 2,609,307 for the trademark "YOUNG AMERICANS FOR FREEDOM" and U.S. Trademark Registration No. 2,634,488 for the trademark "YAF" ("Plaintiff's Marks"). *Id.* ¶¶ 24, 28. Plaintiff and its predecessor have used the YOUNG AMERICANS FOR FREEDOM and YAF Marks in commerce throughout the United States continuously since September 11, 1960, "in connection with indicating membership in a conservative youth organization to further the purposes and goals of the organization." *Id.* ¶¶ 25,

---

[1] This Court accepts all facts alleged within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] The original complaint was filed on May 31, 2024. Dkt. 1. On June 5, 2024, a second version of the complaint was filed. Dkt. 2. This document was not designated an amended complaint and it is not clear to the Court whether the second complaint differs in any way from the first complaint. Nonetheless, the Court will rely on the second complaint – like the parties – and will – like the parties – refer to it as the "Complaint" rather than as an amended complaint.

29. As such, Plaintiff "has expended substantial time, money, and resources marketing and promoting its membership services under the mark[s]." *Id.* ¶¶ 27, 31.

Defendants "publish and disseminate stories, interviews, and reports" through the Know Your Enemy Podcast (the "Podcast") and Dissent Magazine website. *Id.* ¶ 7. Defendants Sitman and Adler-Bell, residents of New York, are co-hosts of the Podcast, which they founded in 2019. *Id.* ¶¶ 12-15. Defendants Sitman and Adler-Bell describe the Podcast as a "leftist's guide to the conservative movement." *Id.* ¶ 16. The Podcast is streamed nationwide on Patreon, Apple, Spotify, and other streaming services. *Id.* ¶¶ 17-18. Defendant Know Your Enemy is headquartered in New York, and sponsors, produces, and hosts the Podcast. *Id.* ¶ 19. Defendant Foundation, a 501(c)(3) organization headquartered in New York, is the publisher of Dissent Magazine and a sponsor and producer of the Podcast. *Id.* ¶¶ 20-21. Defendant Sitman is on the editorial board for Dissent Magazine and Defendant Adler-Bell is a writer for Dissent Magazine. *Id.* ¶¶ 22-23. The Podcast is featured on the Dissent Magazine website. *Id.* ¶ 6.

Plaintiff alleges that, Defendants "adopted and began using the Infringing Marks in connection with the Podcast" in United States commerce without Plaintiff's authorization. *Id.* ¶ 33. Specifically, the Podcast offers bonus content available through the internet platform Patreon. *Id.* ¶ 34. The Podcast's profile on Patreon lists three types of memberships for those who want access to additional content beyond the material provided on other streaming services: "Young Americans for Freedom," "West Coast Straussians," and "John Birchers." *Id.*; Dkt. 2-3 at 1. The "Young Americans for Freedom" membership is the lowest tier of membership and the Podcast refers to these members as "YAF members" (the "Infringing Marks"). Dkt. 2 ¶ 35. To join this membership tier, consumers pay $5.00 per month to receive access to the Patreon-only bonus episodes and content. *Id.* ¶ 36.

3

Plaintiff further alleges that Defendants Sitman and Adler-Bell, as co-hosts and founders of the Podcast, exercise dominion and control of the content of the Podcast, including the use of the Infringing Marks; Defendant Foundation, as publisher of Dissent Magazine, and a sponsor, publisher, and host of the Podcast, actively participates in the use of the Infringing Marks; and Defendant Know Your Enemy, as the producer and publisher of the Podcast, actively participates in the use of the Infringing Marks.  *Id.* ¶¶ 38-40.

### B. Procedural Background

Prior to the instant action, Plaintiff filed an action against Defendants on February 24, 2023 (the "2023 Action"), alleging claims of trademark infringement and unfair competition based on Defendants' unauthorized use of Plaintiff's Marks in connection with the Podcast.  *See Young America's Found. v. Matthew Sitman, et al.*, Case No. 1:23-cv-253 (E.D. Va.);[3] Dkt. 2 ¶ 42. Plaintiff voluntarily dismissed the 2023 Action without prejudice on July 17, 2023, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  Dkt. 2 ¶ 43.  The operative facts giving rise to the 2023 Action are the same operative facts giving rise to the instant action because, "despite having actual knowledge of Plaintiff's Marks and rights, Defendants continued their infringing conduct after the voluntary dismissal of the 2023 Action."  *Id.* ¶ 45.

Plaintiff initiated the instant action on May 31, 2024, Dkt. 1, and filed the operative Complaint on June 5, 2024, Dkt. 2.  On August 5, 2024, Defendant filed a Motion to Dismiss and Memorandum in Support, seeking to dismiss Plaintiff's Complaint for failure to state a claim. Dkts. 28; 29.  Plaintiff filed its Opposition to the Motion to Dismiss on August 19, 2024.  Dkt. 31. On August 26, 2024, Defendant filed its Reply.  Dkt. 36.

---

[3] That case was assigned to Senior U.S. District Judge Claude M. Hilton.  Counsel are reminded of their obligation to notify the Clerk of the Court of related cases on the Civil Cover Sheet – which counsel failed to do here.  Dkts. 1-1, 2-1.

On September 5, 2024, Plaintiff filed a Motion for Leave to file a sur-reply. Dkt. 40. Defendant did not respond to that motion. Accordingly, the Court grants that Motion now and considers the sur-reply as part of the briefing on the Motion to Dismiss.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [its] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in

evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

III. ANALYSIS

The gravamen of Plaintiff's allegations is that Defendants have infringed on Plaintiff's "YOUNG AMERICANS FOR FREEDOM" and "YAF" Marks by offering for sale a "Young Americans for Freedom" and "YAF" membership tier on the Podcast's Patreon page. Dkt. 2 ¶¶ 33-36. Based on these allegations, Plaintiff is bringing claims for federal and common law trademark infringement; state and common law unfair competition; trademark counterfeiting; false design origin; and false advertising. *Id.* ¶¶ 47-91. In their Motion to Dismiss, Defendants assert that Plaintiff's trademark claims are barred by fair use and the First Amendment. Dkt. 29 at 6-15. Defendants also argue that Plaintiff has failed to plausibly allege that Defendants' use of the marks is likely to cause confusion or to plausibly allege any of its counterfeiting claims. *Id.* at 15-20. Finally, Defendants assert that Plaintiff's state law claims are barred by the Virginia anti-SLAPP law. *Id.* at 21-23. The Court will address each argument as it arises in the Court's evaluation of Plaintiff's claims.

A. Trademark Infringement and Unfair Competition

The standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same. Likewise, trademark infringement and unfair competition claims under Virginia law apply the same test. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 522-23 (4th Cir. 2002); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, n.10 (4th Cir. 1995). To allege either claim successfully, a plaintiff must establish: "(1) that it possesses the mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant

6

used the mark in connection with 'the sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." 15 U.S.C. §§ 1114, 1125(a); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).

As an initial matter, Plaintiff has sufficiently alleged that it has a valid and protectable mark. When the USPTO issues a certificate of registration, that registration provides *prima facie* evidence of: (1) the validity of the mark and its registration; (2) the registrant's mark; and (3) the registrant's exclusive right to use the mark on or in connection with the goods and services specified in the certificate of registration. *U.S. Search, LLC*, 300 F.3d at 524; *see Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001) (holding that the certificate of registration provided *prima facie* evidence of validity of the trademark at issue); *see also Rebel Debutante LLC v. Forsythe Cosm. Grp., Ltd.*, 799 F. Supp. 2d 558, 569 (M.D.N.C. 2011) (same). Here, Plaintiff's allegations and the public record together constitute a plausible claim for valid trademark ownership. First, the Court presumes that Plaintiff owns its "YOUNG AMERICANS FOR FREEDOM" and "YAF" Marks because it presented proof of registration with the USPTO. Dkt. 2 ¶¶ 24, 28; Dkt. 2-1, U.S. Trademark Registration No. 2,609,307 (issued Aug. 20, 2002); Dkt. 2-2, U.S. Trademark Registration No. 2,634,488 (issued Oct. 15, 2002). Plaintiff's factual allegations thus show that Plaintiff is the owner by assignment of U.S. Trademark Registration No. 2,609,307 and No. 2,634,488, issued by the USPTO. Dkt. 2 ¶¶ 24, 28.

Furthermore, Plaintiff sufficiently alleges the other requirements of a trademark infringement claim in its Complaint. 15 U.S.C. §§ 1114, 1125(a). Plaintiff asserts that Defendants use Plaintiff's Marks on the Podcast's Patreon page, offering for sale a membership tier entitled "Young Americans for Freedom" that consumers can pay $5.00 per month to purchase and receive

7

access to bonus episodes and content. Dkt. 2 ¶¶ 34-36; *see also* Dkt 2-4 at 1 (displaying screenshot of membership tiers offered on the Podcast's Patreon profile). Further, Defendants refer to those who join the "Young Americans for Freedom" tier as "YAF members." Dkt. 2 ¶ 35; *see also* Dkt 2-4 at 1. Plaintiff also argues that Defendants' use of Plaintiff's Marks

> have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Podcast's services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that the Podcast's services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

Dkt. 2 ¶¶ 51, 58. Defendants assert that this is insufficient to allege likelihood of confusion. Dkt. 29 at 16-19. However, given that Defendants are using Plaintiff's Marks, which Plaintiff uses "for indicating membership in a conservative youth organization," *id.* ¶ 24, *verbatim* to sell a membership for a podcast that purports to provide information on "the conservative movement," *id.* ¶ 16, and is "about the American Right," Dkt. 2-4 at 1, Plaintiff's allegations as to confusion are sufficient, at this stage, to support its claims, *see Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, at 259 (4th Cir. 2007) (listing "similarity of the two marks" and "similarity of the goods or services the marks identify" as two of several factors that courts may consider in evaluating the likelihood of confusion created by the use of a trademark); *see also Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 386 (W.D. Va. 2018) (explaining that "in this circuit, cases hold that a plaintiff need not plead with specificity how the infringing trademark causes confusion").

In opposition, Defendants argue that their references to Young Americans for Freedom and YAF "constitute nominative fair use and are protected by the First Amendment." Dkt. 29 at 6-15. The doctrine of nominative fair use applies where "the defendant uses the plaintiff's trademark to identify the plaintiff's own goods, . . . and makes it clear to consumers that the plaintiff, not the

8

defendant, is the source of the trademarked product or service." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (internal quotation marks and citations omitted). While Defendants may raise the nominative fair-use doctrine as an affirmative defense, *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 330 (4th Cir. 2015) (describing fair use as affirmative defense), it is not appropriate to address such a defense at the motion to dismiss stage unless the face of the complaint clearly reveals the existence of a meritorious affirmative defense, *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Here, the face of the Complaint does not reveal the existence of the affirmative defense that Defendants raise — that Defendants used Plaintiff's Marks to identify Plaintiff's own goods so as to make Defendants' use of the Marks nominative in nature. Rather, the Complaint plausibly alleges that Defendants used Plaintiff's Marks to identify goods and services belonging to *Defendants*, namely the "Young Americans for Freedom" membership tier on the Podcast's Patreon page that grants members access to additional episodes and content in exchange for payment. Dkt. 2 ¶¶ 34-36. Thus, the Court will not consider Defendants' nominative fair use defense at this stage of the proceedings but does not preclude Defendant from raising this defense at a later time.

In addition to nominative fair use, Defendants argue that their "expressive use" of Plaintiff's Marks as a "humorous critique" is protected by the First Amendment against Plaintiff's federal and state claims. Dkt. 29 at 9-14. Specifically, Defendants urge the Court to apply the test identified in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *Rogers* stands for the proposition that a Lanham Act claim cannot be based on the misleading use of a mark in an expressive work "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 998-99. Defendants assert that the *Rogers* test applies because their references to "Young

9

Americans for Freedom" and "YAF" are artistically relevant to the Podcast's critiques of the conservative movement, and do not expressly mislead as to source. Dkt. 29 at 9.

The Fourth Circuit has held that, while "[t]he Lanham Act and First Amendment may be in tension at times, [] they are not in conflict so long as the Act hews faithfully to the purposes for which it was enacted." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 321-22 (4th Cir. 2015). "The risk of impinging on protected speech is much greater when trademarks serve not to identify goods but rather to obstruct the conveyance of ideas, criticism, comparison, and social commentary." *Id.* at 322. Thus,

> [i]t is for this reason that an actionable trademark claim does not simply require that the alleged infringer used in commerce the mark that the trademark holder possesses. It also requires that the infringer's use be "in connection with" goods or services in a manner that is "likely to cause confusion" among consumers as to the goods' or services' source or sponsorship.

*Id.* (quoting 15 U.S.C. §§ 1114(1)(a) & 1125(a)(1)). In the same vein, the Supreme Court has made clear that the *Rogers* test "does not [apply] when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023) (explaining that "[t]hat kind of use falls within the heartland of trademark law and does not receive special First Amendment protection").

As with Defendants' fair use argument, the face of the Complaint does not permit the Court to apply the *Rogers* test at this stage of the proceedings. Although the Podcast may be a humorous critique of the conservative movement using Plaintiff's Marks as Defendants claim, this claim does not appear on the face of the Complaint and "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor*, 263 F. Supp. at 618. The Complaint plausibly alleges that Defendants' use of Plaintiff's Marks in naming a membership tier

10

on the Podcast's Patreon page is commercial in nature rather than expressive, identifying goods and services belonging to *Defendants* rather than to Plaintiff. Defendants offer a "Young Americans for Freedom" membership tier, which grants members access to additional episodes and content, in exchange for payment, thus using Plaintiff's Marks in a manner that generates revenue for *Defendants* and not Plaintiff. Dkt. 2 ¶¶ 34-36. This is precisely the kind of commercial trademark misuse that the Lanham Act governs and that falls outside the ambit of First Amendment protection delineated by *Rogers* and *Jack Daniels*. Thus, because the Complaint alleges that Defendants use Plaintiff's Marks as identifiers for Defendants' own goods and services, the First Amendment does not bar Plaintiff's claims as alleged in the Complaint. As with Defendants' fair use argument, however, this ruling does not prevent Defendants from raising a First Amendment argument at a later stage in the proceedings, once the factual record has developed.[4]

Thus, construing the facts in the light most favorable to Plaintiff, Plaintiff has pleaded sufficient facts at this stage to state claims for federal and common law trademark infringement and unfair competition. Accordingly, the Court will, at this time, deny Defendant's Motion to Dismiss based on Defendants' nominative fair use and First Amendment arguments as they pertain to those claims.

---

[4] Defendants would be better positioned here if the arguments that they make in their Memorandum in Support of the Motion to Dismiss appeared on the face of the Complaint and attached exhibits. Defendants assert that Exhibit C of the Complaint identifies "Young Americans for Freedom," West Coast Straussians," and "John Birchers" as the "enemies" referenced in "Know Your Enemy." Dkt. 29 at 8. Not so. Rather, the exhibit merely reflects the identified categories of subscriptions, without indicating that these are the enemies to which the Podcast refers. Thus, if someone is searching to contribute to Plaintiff via Patreon, that person may unknowingly subscribe to Defendants.

B. Trademark Counterfeiting Claims

For similar reasons, Plaintiff has plausibly alleged its federal trademark counterfeiting claims (Counts III and IV). To state a counterfeiting claim under the Lanham Act, a plaintiff must show that "(1) the defendant intentionally used a counterfeit mark in commerce, (2) the defendant knew that the mark was counterfeit, (3) the use occurred in connection with the sale, offering of sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers." *Associated Gen. Contractors of Am. v. Stokes*, 2013 WL 1155512, *3 (E.D. Va. Mar. 19, 2013). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." *Associated Gen. Contractors of Am.*, 2013 WL 1155512, at *3 (quoting 15 U.S.C. § 1114 (2012)). Courts need not "indulge in a prolonged and minute comparison of the conflicting marks" but should view the marks considering how the parties use their marks in the marketplace. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

Here, Plaintiff has pleaded sufficient facts to support its counterfeiting claims. Plaintiff alleges that Defendants intentionally and knowingly used marks identical to Plaintiff's "YOUNG AMERICANS FOR FREEDOM" and "YAF" Marks in commerce by offering for sale the "Young Americans for Freedom" membership tier on the Podcast's Patreon page. Dkt. 2 ¶¶ 34-36, 64, 68. Defendants allegedly had knowledge that they were using counterfeit marks because Plaintiff previously filed an action against Defendants on February 24, 2023, based on the same operative facts underlying the instant action. *Id.* ¶¶ 42, 45. Plaintiff further alleges that "despite having actual knowledge of Plaintiff's Marks and rights, Defendants continued their infringing conduct after the voluntary dismissal of the 2023 Action." *Id.* ¶¶ 44, 45. Further, as discussed *supra*, Plaintiff has sufficiently alleged likelihood of confusion. Defendants assert, however, that "the

12

products here are not even close to identical" as "Membership in a conservative youth organization is different than a listener subscription to a 'leftist' podcast." Dkt. 29 at 19-20. But Defendants are using Plaintiff's Marks, which Plaintiff uses "for indicating membership in a conservative youth organization," *id.* ¶ 24, *verbatim* to sell a membership for a podcast that purports to provide information on "the conservative movement." *Id.* ¶ 16. Moreover, the Podcast's Patreon webpage that displays the membership tiers merely describes the Podcast as "a podcast about the American Right," Dkt. 2-4 at 1. Thus, there is the potential for confusion because consumers encountering Defendants' "Young Americans for Freedom" membership tier may have trouble discerning whether the offering is associated with Plaintiff's organization, especially given that both Plaintiff and Defendants engage with political discourse about the "American Right" and both Plaintiff's Marks and Defendants' Infringing Marks are used to indicate membership.

Given the Complaint's allegations of Defendants' use of Plaintiff's Marks in connection with the sale for goods or services, Defendants' knowledge of Plaintiff's trademark rights, and the likelihood of confusion, Plaintiff's allegations are sufficient, at this stage, to support its trademark counterfeiting claims. Accordingly, Defendants' Motion to Dismiss will be denied as to Plaintiff's trademark counterfeiting claims (Counts III and IV).

### C. False Advertising

Count VI of the Complaint asserts a false advertising claim against Defendants. To adequately plead a false advertising claim under 15 U.S.C. 1125(a)(1)(B) of the Lanham Act, a plaintiff must show that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is

13

> likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298-99 (4th Cir. 2017) (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)). Further, "[c]ourts uniformly interpret 'false or misleading' as creating two different theories of recovery in a false advertising claim: a plaintiff must allege either (i) that the challenged representation is literally false or (ii) that it is literally true but nevertheless misleading." *In re GNC Corp.*, 789 F.3d 505, 514 (4th Cir. 2015). "A Lanham Act plaintiff arguing that a representation is misleading must produce extrinsic evidence of actual consumer confusion—it is not enough for a court to determine after the fact that a representation could have misled hypothetical consumers." *Id.*

Defendant argues that Plaintiff does not and cannot allege that Defendants' "Young Americans for Freedom" and "YAF" references are literally false, and, as a result, must allege that the representations are both misleading and have caused actual consumer confusion. Dkt. 28 at 18-19. Defendants further contend that Plaintiff has failed to allege actual consumer confusion. *Id.* Plaintiff counters that it has alleged actual confusion. Dkt. 31 at 19. Specifically, the Complaint states that "Defendants infringing acts alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Podcast's services," leading the public to mistakenly believe that "the Podcast's services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff." *Id.* ¶ 77.

As the Fourth Circuit has held, for a false advertising claim based on a misleading representation "it is not enough for a court to determine after the fact that a representation could have misled hypothetical consumers." *In re GNC Corp.*, 789 F.3d at 514 (requiring "extrinsic evidence of actual consumer confusion" for a false advertising claim based on a misleading

14

representation).  Here, Plaintiff does not identify – even in general terms – any consumer that was actually confused.  Plaintiff's conclusory allegation alone is insufficient to meet its pleading burden for a false advertising claim under *Twombly* and *Iqbal*.  As such, the Court will grant Defendants' Motion to Dismiss with respect to Plaintiff's false advertising claim (Count VI).

### D. State Law Claims

Defendants argue that Plaintiff's state law trademark infringement and unfair competition claims – Counts VII, VIII, and IX – are barred by Virginia's anti-SLAPP law, Va. Code § 8.01-223.2.  Dkt. 29 at 21-23.  Virginia's anti-SLAPP law provides that "[a] person shall be immune from tort liability if the tort claim is based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States."  Va. Code § 8.01-223.2.  As discussed *supra*, the First Amendment does not protect Defendants' use of Plaintiff's Marks as alleged in the Complaint.  Accordingly, Defendants' Motion to Dismiss will be denied in this regard, but Defendants may renew this argument at a later stage of the proceedings.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 28) is GRANTED-IN-PART and DENIED-IN-PART.  The Motion is granted with respect to Count VI and denied in all other respects; and it is

FURTHER ORDERED that Count VI of the Complaint is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any amended complaint on or before April 18, 2025, or to notify the Court that it intends to proceed solely with the remaining Counts by that date; and it is

FURTHER ORDERED that the Motion for Leave to File Sur-Reply (Dkt. 40) is GRANTED.

The Clerk is directed to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
March 25, 2025

                                                   /s/
Rossie D. Alston, Jr.
United States District Judge